**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | |
|---|---|
| PARALLEL TOWERS III, LLC and ) <br> CELLECTIVE SOLUTIONS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COUNTY OF OTTAWA, KANSAS et al ) <br> ) <br> Defendants. ) | Case No. 22-cv-02085 |

**SBA TOWERS V, LLC'S MOTION TO INTERVENE
AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1)(B), SBA Towers V, LLC ("SBA") seeks leave to intervene in the above-captioned matter.

This lawsuit concerns the legality of the County's denial of Plaintiffs' application to construct a new wireless communications facility (commonly known as a cell tower) only one-half a mile away from SBA's existing tower. As admitted in the Complaint, the sole purpose of the proposed tower is to allow SBA's anchor tenant, AT&T, to relocate its equipment from SBA's existing tower to the new tower because, according to Plaintiffs, AT&T no longer finds the terms of its existing lease with SBA acceptable. As such, SBA has a direct economic interest in the outcome of this litigation which is sufficient to justify intervention under controlling Tenth Circuit caselaw.

In addition, Plaintiffs allege the County violated the 2016 Kansas Siting Act (K.S.A. 66-2019), which to SBA's knowledge has never been construed or applied by any state or federal court in Kansas. As an owner and operator of wireless communications facilities in Kansas, SBA

has a direct and substantial interest in how the Court construes and applies the Kansas Siting Act, which is also sufficient to justify intervention.

For these reasons, as explained in more detail below, SBA requests leave to intervene.

## I. BACKGROUND

SBA Communications Corporation ("SBA Communications") is a leading independent owner and operator of wireless communications infrastructure, including towers. Among other things, SBA Communications generates revenue from leasing antenna space on its multi-tenant towers to wireless service providers. AT&T is one of SBA Communications' largest customers. Either directly or through its subsidiaries, SBA Communications owns and operates approximately 6,690 wireless communication facilities (commonly referred to as "cell towers") on which AT&T leases antenna space, including 120 towers in Kansas alone.

The proposed intervenor, SBA Towers V, LLC ("SBA"), is a subsidiary of SBA Communications. SBA owns and operates a 300' tall wireless communication facility at 1636 North 20th Road in Ada, Kansas, a small rural community located in Ottawa County (as of the 2020 Census, the population of Ada was only 86 residents). The SBA tower was constructed in 2013 pursuant to a long-term ground lease, extending until 2052. SBA, in turn, leases antenna space on the tower to AT&T.

Apparently, in an attempt to gain negotiating leverage against SBA regarding the terms of its tower lease in Ada, AT&T engaged in Plaintiffs to propose a new tower in unreasonably close proximity to the existing SBA tower, less than 1,000 yards away (.53 miles according to Plaintiffs). Thus, if the Proposed Tower is permitted, the small rural community of Ada would have two towers, 330 and 300 feet in height, bookending the northwest and southeast edges of town.

To be sure, AT&T does not need the Proposed Tower from a technical perspective or to fill a gap in coverage, which seems obvious given its close proximity to the existing SBA tower. Rather, the Proposed Tower is being pursued strictly as a negotiating tool of AT&T, to force SBA to accept AT&T's desired lease terms or else AT&T will make good on its threat to relocate to the new tower. Plaintiffs candidly admit as much in the Complaint, stating that the sole purpose of the Proposed Tower is so that AT&T can relocate its equipment from SBA's nearby tower. (Dkt. at ¶¶ 2; 57). Plaintiffs allege it is "cost prohibitive" and "economically unfeasible" for AT&T to provide enhanced wireless service from SBA's tower (although AT&T is permitted by the existing lease to add, replace or upgrade equipment). (Dkt. at ¶ 57). Despite attempting to justify the need for the Proposed Tower based on the economic terms of the existing SBA lease, Plaintiffs then suggest the Proposed Tower "is not merely a negotiating tool" for AT&T. (Dkt. at ¶ 102). Objectively, that is precisely what it is, and AT&T has engaged in this same scheme against SBA in other locations, at least two of which have spawned other federal litigation. *See e.g., Parallel Towers III, LLC et al. v. County of St. Charles, Missouri*, Case No. 4:22-cv-00079-HEA, in the United States District Court Eastern District of Missouri; *Tillman Infrastructure LLC v. The Board of Supervisors of Culpepper County, Virginia et al.*, Case No. 3:21-cv-00040-NKM-JCH, in the United States District Court Western District of Virginia.[1]

In those cases, like here, competitors of SBA Communications have applied for new towers in close proximity to an existing SBA tower, not to fill a gap in coverage but to allow AT&T to

---

[1] Indeed, this case appears to be part AT&T's "hardball" negotiating tactics to force tower owners nationwide into submission. See *AT&T's Veiled Tower Lease "Threats" Surface Again With New Onerous Requirements*, Wireless Estimator, September 27, 2016 (https://wirelessestimator.com/articles/2016/atts-veiled-tower-lease-threats-surface-again-with-new-onerous-requirements/); *AT&T Reiterates Tower Threat; Lower Costs or Else*, Fierce Wireless, December 17, 2018 (https://www.fiercewireless.com/wireless/at-t-reiterates-tower-threat-lower-costs-or-else); *AT&T: We Moved Hundreds of Tower Sites in 2019 to Get Better Deals*, Light Reading (https://www.lightreading.com/4g-3g-wifi/atandt-we-moved-hundreds-of-tower-sites-in-2019-to-get-better-deals/d/d-id/761466 ).

3

relocate its equipment from the nearby SBA tower for purported economic reasons. For example, in the St. Charles, Missouri case, Parallel alleged "AT&T desires to relocate from another WCF [referring to an SBA tower] in the area because that tower owner is imposing a cost structure that is not feasible . . . ." *Parallel Towers III,* Complaint at ¶ 39.[2]  In *Tillman Infrastructure*, the plaintiff alleged "[t]here is only one existing tower within the geographic area [referring to the SBA tower] which is currently deemed by the anchor carrier, AT&T, as unsuitable due to fees, costs and contractual provisions." *Tillman Infrastructure,* Complaint at ¶ 17.

Thus, the residents of Ada, Kansas, and the Ottawa County Commissioners saw the application for the Proposed Tower for exactly what it was, refused to be used as a pawn in AT&T's lease negotiations, and rejected a tower that was strongly opposed, unnecessary and detrimental to the aesthetics of this small rural community.

With that context, turning to the present matter, the County lawfully denied Plaintiff's application for a special use permit to construct the Proposed Tower.  SBA seeks to intervene because the stated purpose of the Proposed Tower is to cause economic injury to SBA, that is, to allow AT&T to relocate from SBA's tower to the new tower.  Under controlling Tenth Circuit case law, "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002); *United States v. Albert Inv. Co., Inc*., 585 F.3d 1386, 1398 (10th Cir. 2009) ("An interest in preventing an economic injury is certainly sufficient for intervention as of right.").

In addition, Plaintiffs allege the County violated the 2016 Kansas Siting Act in denying the application.  Plaintiffs and SBA disagree on the proper scope and application of the Act, which has never before been construed by any state or federal court in Kansas (or elsewhere).  As an

---

[2] Plaintiffs voluntarily dismissed the *St. Charles* case on May 10, 2022.

owner and operator of wireless communications facilities in Kansas, SBA has a direct and substantial interest in how the Court construes and applies the Act, which may determine not only the lawfulness of the County's denial here, but will provide guidance to SBA and local governing bodies considering future applications submitted by SBA and its competitors.  Intervention is appropriate where resolution of legal questions may affect the rights of the proposed intervenor in later proceedings. *Ute Distrib. Corp. v. Norton,* 43 Fed.Appx. 272, 279 (10th Cir. 2002).

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 24 allows two types of intervention—intervention as a matter of right pursuant to Rule 24(a) and permissive intervention pursuant to Rule 24(b)." *Elk Energy Holdings, LLC v. Gotham Res. Dev. Co., LLC*, 6:21-CV-1235-EFM-KGG, 2022 WL 266796, at *1 (D. Kan. Jan. 28, 2022).

"To intervene as a matter of right pursuant to Fed. R. Civ. P 24(a)(2), the movant must establish, upon a timely motion, that it 'claims an interest relating to the property or transaction which is the subject of the action; the interest may as a practical matter be impaired or impeded; and ... the interest may not be adequately represented by existing parties.'"  *Id.* (quoting *Everest Indem. Ins. Co. v. Jake's Fireworks, Inc.*, 335 F.R.D. 330, 332-33 (D. Kan. 2020)).  "Upon such a showing, the Court 'must' permit intervention. Fed. R. Civ. P. 24(a).  Historically, the Tenth Circuit has taken a 'liberal approach to intervention [as a matter of right] and thus favors the granting of motions to intervene.'" *Id.* (quoting *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)).  "The central concern in deciding whether intervention [of right] is proper is the practical effect of the litigation on the applicant for intervention." *San Juan Cnty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (*en banc*).

"Permissive intervention pursuant to Fed. R. Civ. P. 24(b), on the other hand, rests in the discretion of the trial court. The court's discretion to grant or reject Rule 24(b) intervention is broader than that of Rule 24(a)." *Id*. (citing *Albert Inv. Co., Inc.*, 585 F.3d at 1390). "According to the Rule, the Court 'may permit' intervention to anyone who . . . 'has a claim or defense that shares with the main action a common question of law or fact.' The Court, in exercising its discretion, must determine whether 'intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* (quoting Fed. R. Civ. P. 24(b)(1)(B) and (b)(3)).[3]

### III.   ANALYSIS

#### A.   Intervention as of Right.

As set forth above, intervention as of right is liberally permitted in the Tenth Circuit. SBA must demonstrate: (1) its motion is timely; (2) that it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties. The movant bears a "minimal burden" to satisfy these requirements. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995-96 (10th Cir. 2009).

##### 1.   SBA's motion is timely.

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances . . . Federal courts should allow intervention where no one would be hurt and greater justice could be attained." *Utah Ass'n of Cntys. v. Clinton,* 255 F.3d 1246, 1250 (10th Cir. 2001) (internal citations omitted). Prejudice in this context means prejudice caused by the movant's delay in seeking

---

[3] SBA does not claim a right to intervene granted by federal statute, as allowed under Fed. R. Civ. P. 24(a)(1) or (b)(1)(A).

intervention, not the mere fact of intervention. *Kane Cnty. v. United States*, 928 F.3d 877, 891 (10th Cir. 2019)).

Plaintiffs' First Amended Complaint was filed on March 3, 2022. (Dkt. 4). The County filed its answer on April 27. (Dkt. 12). The initial scheduling conference is set for June 21, 2022. (Dkt. 13). This case is in its infancy and no party will be prejudiced by the timing of SBA's intervention. Therefore, SBA's motion is timely.

### 2. SBA claims an interest that could be impaired by the litigation.

Courts often address the second and third elements together since they are closely related. *See e.g., Everest Indem. Ins. Co.*, 335 F.R.D. at 333; *Nat'l Farmers Union Prop. & Cas. Co. v. Rengstorf*, 21-2453-EFM, 2022 WL 558116, at *1 (D. Kan. Feb. 24, 2022) ("The court addresses the first and second elements together because they're closely related"). "To satisfy these elements, the party seeking to intervene bears a 'minimal' burden to show that it has an interest that could be adversely affected by the litigation." *Everest Indem. Ins. Co.*, 335 F.R.D. at 333 (citing *Kane Cnty.*, 928 F.3d at 890).

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, and the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citations and quotations omitted). "A protectable interest is one that 'would be 'impeded by the disposition of the action.'" *W. Energy All.*, 877 F.3d at 1165 (quoting *San Juan Cnty.*, 503 F.3d at 1203). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *San Juan Cnty*, 503 F.3d at 1195. "[T]he movant's relationship with the subject of the action is

determinative, not its relationship with the issues before the court." *Bowers v. Mortgage Elec. Registration Sys.*, CIV.A. 10-4141-JTM, 2011 WL 3349297, at *3 (D. Kan. Aug. 3, 2011) (citations omitted).

### (a). SBA's economic and competitive interests may be impaired by the outcome of the litigation.

As relevant here, "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." *Utahns for Better Transp.*, 295 F.3d at 1115; *Albert Inv. Co., Inc.*, 585 F.3d at 1398 ("An interest in preventing an economic injury is certainly sufficient for intervention as of right.").

As alleged in the Compliant, the sole purpose of the Proposed Tower is to allow AT&T to relocate its equipment from the adjacent SBA Tower, which AT&T now deems too expensive, apparently. Thus, SBA will suffer direct economic injury from the loss of AT&T as a tenant if Plaintiffs prevail in this litigation. As stated above, this is not an isolated incident but is instead part of a larger scheme by AT&T and SBA's competitors to cause direct economic injury to SBA. The Court's adjudication of the claims in this case may well impact AT&T's and SBA's competitors' efforts in other jurisdictions as well.

Thus, under controlling Tenth Circuit case law, the threat to SBA's economic interests by the outcome of this litigation permits SBA to intervene as of right.

### (b). SBA's interest in this Court's interpretation and application of the Kansas Siting Act permits intervention.

Although Plaintiffs bring this case in federal court pursuant to the Federal Telecommunications Act, Plaintiffs' claims largely focus on alleged violations of the Kansas Siting Act, K.S.A. 66-2019. (Dkt. 4, Amended Complaint at Count I). The Kansas Siting Act was enacted in 2016 but, to SBA's knowledge, it has never been construed or applied by any state or federal court in Kansas. As such, this is a case of first impression.

Whether the Kansas Siting Act even applied to Plaintiffs' application for the Proposed Tower was a subject of much debate in the underlying administrative proceedings. SBA and Plaintiffs' counsel sent letters to the County explaining their opposing positions on application of the Siting Act (SBA contends the Act was intended to apply only to applications for wireless communications facilities physically located on public property). The County attorney initially agreed with SBA, however, the County's separate, outside counsel, disagreed with SBA's position. Nevertheless, this Court will need to decide as a matter of first impression whether the Siting Act applies to the application here.

Moreover, even if the Siting Act applies, SBA disagrees with Plaintiffs' interpretation of certain restrictions stated therein. As one example, nothing the Siting Act restricts the local authority's right to deny an application based on the visual impact and aesthetics of the proposed tower, as suggested by Plaintiffs.

SBA's interest in the construction and application of the Siting Act, and the precedential effect of this case of first impression, is an interest sufficient to justify intervention. *Ute Distrib. Corp. v. Norton*, 43 Fed.Appx. 272, 279 (10th Cir. 2002) (A proposed intervenor's interest may be impaired "when the resolution of the legal questions in the case effectively foreclose the rights of the proposed intervenor in later proceedings, whether through res judicata, collateral estoppel, or *stare decisis*.").

### 3. The County does not adequately represent SBA's interests.

"The burden to establish inadequate representation by existing parties is 'minimal.'" *Everest Indemn. Ins. Co.*, 335 F.R.D. at 334 (citing *Barnes*, 945 F.3d at 1124). "If the parties' interests are identical, the court may presume adequate representation." *Id*. (citing *Kane*, 928 F.3d at 892). "But the possibility of divergent interests is enough to satisfy this element and, to that

9

end, the moving party need only show the potential for inadequate representation." *Id*. (citing Western Energy, 877 F.3d at 1168).

SBA's economic and competitive interests are distinct from the County's general interest in validating its zoning decisions. And, as stated above, the County and SBA disagree on application of the Kansas Siting Act, although they do agree that even if the Act applies it was not violated. Further, as an owner and operator of wireless support structures in Kansas, SBA has a unique interest in the Court's construction and application of the Kansas Siting Act that is distinct from the County's interest in ensuring validity of its zoning decisions.

SBA and the County's divergent interests and legal positions satisfies SBA's minimal burden to demonstrate lack of adequate representation.

For the reasons stated above, SBA should be permitted to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2).

### B. Permissive Intervention.

Even if SBA did not have a right to intervene under Rule 24(a)(2), permissive intervention is still appropriate under Rule 24(b)(1)(B) because, as set forth above, SBA has a "claim or defense that shares with the main action a common question of law or fact." SBA's intervention will not unduly delay or prejudice the adjudication of Plaintiffs' claims but, instead, will assist the Court in determining issues of first impression in Kansas, namely, the scope, construction and application of the Kansas Siting Act.

### IV. CONCLUSION

For the foregoing reasons, SBA requests leave to intervene as a party defendant in this matter. Pursuant to Rule 24(c), a copy of SBA's proposed pleading is attached hereto as **Exhibit A.**

Respectfully Submitted,

ROUSE FRETS WHITE GOSS
GENTILE RHODES, PC

By: /s/ *Brett C. Randol*
    Greg L. Musil    KS #13398
    Brett C. Randol    KS #22794
    5250 W. 116th Place, Suite 400
    Leawood, KS 66211
    Phone: (913) 387-1600
    Fax: (913) 928-6739
    gmusil@rousep.com
    brandol@rousepc.com

ATTORNEYS FOR MOVANT

## CERTIFICATE OF SERVICE

    I certify that on May 20, 2022, I electronically filed the foregoing document using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

    /s/ *Brett C. Randol*